Good morning, Your Honors. May it please the Court. My name is Norman Morris. I'm here today representing Officer Toby Hall on the appeal from the District Court's decision. I'd like to reserve three minutes for a rebuttal. We're here today because the District Court erred in three ways on its decision relating to our motion for summary judgment. First, the District Court did not address in any way the second ground for the arrest in ruling on the wrongful arrest claim. It focused entirely upon the medical. The undisputed facts then are that there was a second ground for arrest and that was the unlawful possession of a loaded concealed handgun. That fact is undisputed. The Court appeared to have lumped that analysis into the medical analysis relating to the diabetes. That's improper. We would be entitled to qualified immunity at the very least on that under O'Dowen. But even if hypothetically we were to agree with you, there's still another argument that a claim arose at a somewhat later point in time at the hospital, right? So your point about PC for the gun arrest doesn't deal with what might or might not have arisen at the hospital? That relates to the second and third basis for the errors. The first error is the wrongful arrest. He had probable cause to arrest him. That is undisputed. Plaintiff himself, Mr. Gomes, admitted he did not have a concealed weapons carry license. He told the officer during the stop where the weapon was. The officer located it. It had a loaded magazine in the well, therefore is deemed a concealed handgun under California law. That gave him the ability to arrest him. So as far as the first cause of action to address today for the wrongful arrest, the District Court erred. It, again, attempted to use the analysis for the diabetes instead and focused it exclusively on the diabetes. Turning to the second and the third, the second relates to the state created danger doctrine. And that does relate into the diabetes. That does not relate to the weapon at all. As to the state created danger, again, the Supreme Court erred because it focused on the facts of what happened later. We did not place – and the facts show we did not place the plaintiff in any different situation than he would have been in otherwise at the time of the stop. So I don't really understand that argument. You stopped him. He complained. You took him to the hospital. And then according to plaintiff, you learned that there were no drugs and alcohol in the system. And yet instead of taking that and knowing that that meant that there was a big danger here, you took him back to the station. So I don't understand why that's not a viable state created danger circumstance. Certainly. And actually the issue that you just referenced with the state alleged statement at the hospital, that's one of the key issues on appeal that the district court erred on. There is no evidence whatsoever to show – no independent evidence whatsoever to show that any tests were performed at the hospital. But first of all, there's no factual dispute that there was a blood and alcohol screening, right? Correct, Your Honor. And there's no dispute that – there's a dispute about when you learned, but there's no dispute that it came back negative, right? Correct, Your Honor. Okay. So then you have his statement in the depot. And then someone came over because I had my eyes closed. They said, no, we couldn't find any drugs or alcohol in his system. I think this is in several places, but I'm looking at 3 ER 257. Why isn't that admissible evidence for the proposition that your client heard that and still took him back to the station? First of all, Your Honor, it's inadmissible hearsay. It's not hearsay. It's not offered for the truth of the matters asserted. It's offered for the fact that your client heard it. So even if we have jurisdiction to reach the hearsay issue, I don't see how it's even conceivably hearsay. It's offered for your client hearing it. There's no question that it's true. But regardless of whether it's true or not, there's evidence from which an adjudicator could determine that your client heard it. Your client said that he was at the hospital with him the whole time. So if it was said at the hospital, there's evidence from which a trier of fact could conclude your client heard it. Again, Your Honor, I will point out that the only evidence in the record relating to these tests show that these tests were performed. The alcohol test was, I believe, performed 3 days later after this incident. And the drug screening test, the only evidence of any drug screening test that there is indicates that it was performed weeks if not months after this incident. There is no evidence that there was any test performed at the hospital. Indeed, I think when we look back at the additional testimony that was provided here about the length of time, I believe the court would probably agree that it's highly unlikely that any hospital, we've all had the experience of going in and having blood drawn, that any hospital is going to get you complete blood and alcohol tests within 30 minutes. That's the length of time he was at the hospital the first time, approximately 30 minutes. It just seems like you are asking us to resolve factual disputes, and that's just not appropriate here on appeal. And regardless, in this posture, we have to make all inferences in favor of the non-moving carding, Mr. Gomes. Well, in light of, and this is, Your Honor, this is a case that we did not cite, too, because it's a recent decision from this court. The Cardenas, excuse me while I go back. Cardenas Ornalas v. Johnson at 165 F. 4th, 1234, decided earlier this year, involves a remarkably similar situation. In that court, this court did, in fact, reverse the district court's denial on similar claims. And Cardenas Olson, or I'm sorry, Cardenas Ornalas, the plaintiff was similarly making statements that someone had, that he had heard the statement. And the district court relied upon that in denying qualified immunity. But you would agree with us, right, that we don't have jurisdiction to resolve factual disputes. I would actually, under Cardenas Ornalas and the case that Cardenas Ornalas cited, I believe that you do have jurisdiction. Cardenas Ornalas' quote, although we do not ordinarily have jurisdiction on an interlocutory appeal to review a denial of qualified immunity based on the existence of a disputed fact, when there is an allegation about the conduct part of the equation, but insufficient evidence of that conduct to create a genuine issue of material fact, our cases permit review. But counsel, even if I were to agree with you on your legal point, the district court said, Gomes asserts that Hall was informed that the blood draw did not find any drugs or alcohol in his system before he transported Gomes from the hospital to the jail. And the district court also said, at the hospital, Hall was informed that Gomes' blood draw showed that he had no drugs or alcohol in his system. And he testified that he heard someone say this while essentially he was at the hospital and while Hall was with him the whole time. So even if you're right that we have the ability to review it, I don't see how looking at the evidence in the light most favorable to the plaintiff, that that doesn't create a disputed issue as to whether the officer heard there was no drug or alcohol found in his system while at the hospital before he transported him back to the station. But again, we don't know who said that statement at the hospital, even assuming it's not hearsay. We contend it is hearsay. It's multiple level because it relies upon the test results. There is no evidence of any test results. But again, if it was at the hospital and you don't dispute that your client was with the plaintiff the whole time at the hospital like he testified, right? He was. So if it happened at the hospital and the only people there are your client, him, and people from the hospital, why isn't it a permissible inference to be drawn that it was somebody who knew what they were talking about and that your client heard it? If your client heard it at the hospital, I just don't see how in the light most favorable to the plaintiff that the district court couldn't draw the conclusion it did. Well, first off, just to be clear, our client is denied. Officer Hall denies learning that fact. I understand that. I understand that. He testifies he did not learn of the results until after he'd already been sued. But furthermore, as to the statement here, I think it's also critical to look at the fact the plaintiff testified he had his eyes closed and he was drifting in and out of consciousness. So a trier of fact might not believe him. It's not only not believe, it's the question of is there any basis for that statement? And that's, again, under Wilkinson v. Torres, 610F3R546. When the facts as alleged by the nonmoving party are unsupported by the record such that no reasonable jury could believe them, we need not rely upon those facts for purposes of ruling on the summary judgment motion. So you are relying on cases that say when there's absolutely no evidence that the plaintiff has put forward. But here, I think there's actually a lot. You have Mr. Gomes going in and out of consciousness in the police car on the way to the hospital. You have no smelling of alcohol, right? You have none of the tests that would normally be done in a DUI case. You have none of that, the nystagmus, the rapidly moving dilated pupils. You have none of that that would normally be done for an 11-550 California Health and Safety Code offense or DUI. And so here you have the loss of consciousness. You have all these physical symptoms. You have him saying, I don't use drugs. I haven't drank alcohol. So this is not a case where there's no evidence to support Mr. Gomes' position. Well, I think turning back and looking at the court's recent decision in O'Dowen, which is similar, we are not rely – an officer is not required to rely upon a self-serving statement of innocence. In O'Dowen, it's a very similar fact. In that case, it was an epilepsy case, not this. And it was a probable cause for arrest case. But he claimed the officer was told that I had this medical condition. Therefore, he should have known that I wasn't violating the law. This court held that is not – that did not give rise to a denial for qualified immunity and reversed. Furthermore, if we look at Hopkins v. Bonvicino, which is 573F3752, again, that case is slightly different than that. That is a case relating to whether or not officers were entitled to qualified immunity for a search. And that – Let me give you a hypothetical, which I understand are not the facts here. Let's say the facts that plaintiff proffered were that – and it would be undisputed that the nurse who did the draw – I don't remember the gender. But the nurse who did the draw said to your client, we've looked – we've done the draw for drugs or alcohol. The results are there are no drugs or alcohol in his system. Would that be enough to get past qualified immunity if you added that hypothetical fact here? If they had the actual testimony of that person, likely. However, they have not identified any medical provider at the hospital that allegedly stated that. They do not identify or describe any individual at the hospital. They contend to say it. There is no evidence of any blood or alcohol test being performed by the hospital. In fact, the only blood that was drawn was drawn for processing by the Department of Justice Crime Lab. Had the hospital actually done something with that – with those blood tests, that would have interfered with the criminal chain of custody. So the only test – Even the whole thing about the blood test is unusual. The whole purpose that Officer Hall takes Gomes to the hospital is to get him tested to see if there's blood or – there's drugs or alcohol in his blood. And then the officer claims, well, I never knew the results of that test until I got your complaint. That just – doesn't that seem odd to you? Not at all. I mean, if you took him to the jail for the purpose of maybe booking him for 11-550 or DUI, then it would be assumed since you've done none of the field tests on sobriety and you don't have any other of the normal tests you would conduct to see if someone's under the influence of drugs or alcohol, you would at least have looked at the blood test results. But separate from that, I want to ask you two questions about DeBronstein. DeBronstein analyzed the claim for deprivation of medical care under both Fourth and Fourteenth Amendment. So then how should we say, oh, it's not possible even or proper to consider such a claim under the Fourth Amendment if DeBronstein did both? So that's one. And then the second is you argue there was no clearly established law based on DeBronstein because it was issued three years after the arrest here, but DeBronstein was actually analyzing what was clearly established law in 2018 and this arrest was 2020. So it really doesn't matter when DeBronstein was issued if it's analyzing the law two years before the incident arrest. Certainly. As your first question, I believe it is under the Fourteenth Amendment. As to the second relating to DeBronstein's ruling, DeBronstein is a 2025 ruling, so it cannot be deemed to have given the required notice for purposes of qualified immunity as to something that happened three years before. I think we would all agree upon that. Now, when you turn and you look at the cases cited in— I wouldn't agree about that because it made a finding that this was the clearly established law in 2018. Correct, and that's where I'm going to. The fact that the court in DeBronstein looked at, number one, DeBronstein had a different factual pattern that is entirely distinguishable, and we have to keep that in mind when we talk about DeBronstein. DeBronstein involved time on scene of four hours, very apparent evidence of potential—of damage to the vehicle and other things that should—that the court held should have given rise to that, to the determination that, you know, this person may have some medical conditions. That was not the case here. Furthermore, the cases that DeBronstein cites, when you look at those cases, those are cases that relate to in custody, meaning the person was already in the jail being treated, and those cases are primarily directed against medical providers in those facilities, not a lying police officer out on the streets making an arrest for what he determined he had probable cause for. This court has previously held that police officers are not medical providers and that they should not be held when making these decisions to the after-the-fact determinations relating to medical expert decision. I mean, we said in DeBronstein the standard is one of objective, deliberate indifference in the face of a substantial risk of the plaintiff suffering serious harm, and you've already told me that you agree that if there were clear evidence that the officer were told that no drugs or alcohol, that we'd get past qualified immunity. So it seems like the entirety of your argument is resting on we can't look at what he said. We can't look at what the plaintiff said he heard. Our argument is that there is no evidence to support what he said because there is nothing. Plaintiffs had the opportunity, and Mr. Gomes had the opportunity to introduce any test from the hospital. I mean, if the test was performed at a hospital, there would be a record of that test. Furthermore, I don't believe that it would be in the hospital would notice that they could walk up to someone and say, oh, we did a test result. Here's results. That would be a violation of both California law and federal law for them to provide that information because it's health information. They can take the blood test and then they can pass it on. They can't come back later and say, oh, well, this is what we found. They don't have that. Mr. Gomes could have asked for that information, but he didn't. So that's the issue here. We don't have any evidence whatsoever. There was no admissible evidence that the district court could consider relating to this alleged statement. It's counsel. You're out of time, but we'll give you two minutes for your rebuttal. Good morning, Your Honor's Christian and Contreras on behalf of Mr. Gomes. That may please the court. This case concerns Mr. Gomes, a professional security guard who was on his way to work and suffered from a medical emergency. He pulled over and to address this medical emergency when he was encountered by Officer Hall. Now, the crux of the Fourth Amendment and even the 14th Amendment is reasonableness. There's been significant discussion about what happened at the hospital. But when you look at the totality of the circumstances, totality of the evidence and totality of what happened on the day in question, from the very beginning, it was clear that Mr. Gomes was suffering from a medical emergency. How how was it clear that he was suffering from a medical? Well, how is it clear that what he was suffering from wasn't self-induced drug or alcohol intoxication? Well, Your Honor, there's a specific learning domain from the Peace Officers Standards and Training Guidelines, which apply to every certified police officer, including Officer Hall, which talks about specifically how these officers are first responders and they are trained to recognize issues such as diabetic emergencies. And when you look at the factors, which was actually something presented to the district court in its analysis in terms of how to recognize these issues, it talks about some of the symptoms that are recognized by the officer. There's no question he was driving erratically, right? Correct. And there's no question that he had a loaded gun in the car. That's true. Okay. And then there's no question that relatively quickly, although maybe reasonable people could differ about the quickly part, relatively quickly he was taken to a hospital for a blood and alcohol screen. I wouldn't say relatively quickly. It was roughly 40 minutes that the officer was at the scene before he took him to the hospital initially. Okay. So 40 minutes. Correct. And you're saying it should have been 20 minutes, 15 minutes, 10 minutes, 25 minutes? Well, yes, I would say five minutes. I mean, frankly, we wouldn't even be here if the officer merely would have just summoned medical care as required under the Fourth Amendment. I mean, these officers are trained to recognize these types of issues. We're not saying you should have treated him and done a whole full-blown diagnosis as to exactly what it was, but they're trained to recognize these types of issues as first responders and specifically diabetic emergencies as outlined in the training. And so here not only were there objective symptoms, Mr. Gomes himself. Those symptoms could have easily also been symptoms of drug or alcohol use. They could have. And, in fact, the training says that the officers shouldn't rush to judgment and to confuse drug intoxication with a diabetic coma or diabetic type emergency. So, yes, they have similarities, but the officers should look at the totality of the circumstances. It was a Wednesday evening. Mr. Gomes told the officer that he was on his way to work. There was no drugs found in the car. There was no paraphernalia. And so when looking at everything, it was unreasonable for the officer to assume that he was under the influence. You agree that the officer at a minimum had probable cause on the firearm because Mr. Gomes didn't have a concealed carry license? After the fact, yes. What do you mean after the fact? I mean, your client told him, I got a gun. It's here. I shouldn't have it loaded. I'm a guard. I should know better, but I screwed up. That's true. Okay, so and that's not PC at the time? At the time he sees an illegally carried weapon, which the person admits he entered to, that's not enough for reasonable grounds to believe a crime had been committed or was being committed? Be that as it may, even if there is, I think there is, that is probable cause. But even if that were the case, there's two issues on that ground. Number one, even if someone has committed a crime, the officer doesn't disregard their safety, their medical safety, and say, oh, look, they committed a crime. Let me just take them to jail. I agree. Those are different questions. But you've answered my question about whether there was probable cause. Right, but the second issue with that is that the officers in California can cite and release, depending on. Can, but there's no obligation to, right? Right. And in this case, given whether it was drug induced or something else, there would have been no possible reason for the officer to release your client on the highway, right? Not under this circumstance. Right. Well, that's what we're talking about here, these circumstances. Right, so not under the circumstance, but they're trying to bootstrap probable cause on the different unrelated issue to then try to justify the conduct as a whole, which is improper. You still have to render aid and provide medical care and at least summon medical care. But you can see that you haven't provided any evidence that the officer lacked probable cause based on the firearm. I would agree. I would agree. That would then give us jurisdiction to review whether the district court denial of qualified immunity as to the Fourth Amendment unlawful seizure claim was appropriate or not. Because our law does say that if there's no evidence, then we can actually rule. Right. When there is no evidence, that's under the Foster versus City of Indio case that was cited in the Ornelas case that was cited by counsel. But here there is evidence that I think, frankly, the gun issue is a red herring. No, it's not. It's the basis of probable cause for the arrest. And you've just conceded that you have no evidence against that. So then we have jurisdiction to say that was improper not to grant qualified immunity on the Fourth Amendment claim for unlawful seizure because of. The valid probable cause to arrest based on the firearm. Right. But when looking at the officer's account, the primary reason for the detention was because of his belief, mistaken belief that you can have dual causes for an arrest. You can have probable cause for multiple offenses. You can. You can. But you have to look at it, whether it's reasonable or not. Was it reasonable to detain him for that length of time just because of a firearm that was in the vehicle when he's suffering from a medical emergency? And so I think that's the main issue under the Fourth Amendment. But you're raising. OK, you're raising a different a different point. But let me also say you're seeming to say that your failure to provide medical care is a Fourth Amendment claim. But you've also argued it as a 14th Amendment claim. But that only applies to pretrial detainees, which Mr. Gomes was not. So do you concede that 14th Amendment is not the appropriate amendment to rely on for your medical care claim? I personally wouldn't necessarily concede that, mainly because of Braunstein and what Braunstein said in terms of how these claims could be analyzed. The 14th Amendment claims typically are analyzed under the jail context and pretrial detainees. But Braunstein analyzed it under both the Fourth and 14th. But did Braunstein do that because there's just more case law under the 14th Amendment and said, you know, the Fifth and the 14th Amendment, you know, Fifth Amendment has to rely on a lot of the jurisprudence that's been developed in the 14th Amendment because that jurisprudence exists. And it just doesn't exist to the same extent for the Fifth Amendment. So we're going to consider it that way. But Braunstein also said 14th Amendment is for pretrial detainees and Fifth Amendment is or I'm sorry, Fourth Amendment is for people who are being detained during the course of an arrest. Right. So the main case is Tatum, which talks about Fourth Amendment. But I think the reason why Braunstein reasoned the way it did is because it was looking at a body of law to determine whether it was clearly established, what an officer must do under certain circumstances. And when you're looking at the Fourth and 14th Amendment, it's been clearly established for significant time, well before this case, that an officer has to provide objective care. It doesn't have to provide actual care, but some in medical care or at least do something to render aid immediately when it's clear that the person is suffering from a medical emergency. So whether it's an actual claim, let's say that the case proceeds to trial. I don't think Braunstein is saying it has to fall under either or. Braunstein was saying that under the body of law, which qualified immunity can do, it doesn't have to be just one specific case. It could be a body of law under the Fourth and 14th Amendment jurisprudence of the Ninth Circuit. Officers are on notice that they have to provide objective, reasonable care after arrest. Counsel, I want to turn a minute to your friend's statement that when your client was first taken to the hospital, there's no record of any test being performed. Is that correct? An actual medical record? Yes. That's unclear. We have the medical records from the actual hospital, whether it reflects the actual – there is a medical record which reflects that he was there, he was taken. Whether the actual medical record reflects the reading, that's unclear. But I think that also goes to, frankly, I think the heart of my argument, and I respectfully state that this court lacks jurisdiction to even hear this appeal. I know there's an issue with the Fourth Amendment about the probable cause, but as a whole, their main argument is – the linchpin of their argument is, oh, well, this statement is hearsay. I believe it's non-hearsay. It's being used to show – I agree with you. It's not hearsay. It's for the – it's being offered to show that somebody heard it. Right. But would you agree with me that if there were no evidence of any kind and the district court found a fact based on no evidence of any kind in the record, that that would be a legal error that we had the right to review? I think it depends on evidence. I think it depends on evidence because there is a case. There is a Ninth Circuit case which addresses that, and that's what my friend here was discussing in the Ornelas case. The Ornelas case discussed the Foster v. the City of Indio case, which completely different facts about how – Yeah, so let's say here, hypothetically, obviously the district court didn't do this. The district court said the plaintiff testified in his deposition that the officer said, I've heard the results. You have no drugs or alcohol in your system. And there was nothing in the deposition that said that. Would we lack jurisdiction to review that? The district court just misquoted the deposition entirely. And we have the transcript, and it's clear that that wasn't said. That would be more of a legal error. That would be more of a legal error. I agree with you. But here we're not dealing with a legal error. We're dealing with sufficiency of evidence, which Johnson prohibited. And the whole progeny of Johnson, even George v. Morris, there's multiple, multiple, multiple Ninth Circuit cases which talk about that it's improper for this court in an interlocutory appeal to review the sufficiency of the evidence. And the sufficiency of the evidence is what is being done here in terms of whether it's admissible or not. The court looked at it. But I think, frankly, the bigger issue with just focusing on the statement, the district court relied on five material disputes of fact. This is ER 89. It talked about the first dispute of fact, whether Officer Hall observed gums blocking traffic. Can I just get a clarification on exactly what there's no evidence of? If I look at ER 277, it's a summary of care provided by Cottage Health, so, you know, the hospital. And it says, was actually here for legal blood draw first, taken to jail where his blood sugar was checked and found to be over 600, so was returned here for evaluation. So it does support that a blood draw was done first. Presumably, it was not for the blood sugar because they did that at the jail. So presumably, that was for either the presence of drugs or alcohol, right? That's correct.  And even Officer Hall says, after the blood test, I transported him to the county jail where he did the medical screening. And that's where the nurse tried to take his blood sugar and wasn't able to get a result, right? That's correct. So, I mean, there does seem to be a sufficient amount of evidence in the record that a blood test blood draw was done. For the purpose of drugs and alcohol, when Mr. Gomes was first brought to the hospital. Right, but the biggest issue in this case, there was never any medical care summoned or requested. I mean, it's typical for officers to even take folks to the hospital for an okay to book. An okay to book is just merely taking them for medical clearance. The officer doesn't conduct the actual medical assessment, but at least takes them to the hospital at the very least to have them assessed. Here, because the specific inquiry was just for drugs and alcohol, that wasn't done by the staff. And so if the officer would have merely said, hey, can you just also do a general assessment, clear him to book, we wouldn't even be here. Because the officer would have satisfied his requirements under the Constitution, but he didn't. That's the biggest issue. Can you quickly explain why we shouldn't follow the Fifth Circuit in holding that admissibility questions are not reviewable on appeal of a qualified immunity denial? Yes, because there's plenty case law. I mean, Supreme Court jurisprudence first in Johnson v. Jones, that's the Supreme Court case. And then in the next term, it decided Behrens. But there's significant Ninth Circuit jurisprudence talking about how this court cannot review sufficiency of evidence. The state of Anderson v. Marsh. There's also Ng v. Cooley. That's a 2009 Ninth Circuit case talking about how material facts is categorically unreviewable on interlocutory appeal. And there's just significant cases which talk about that the Ninth Circuit cannot look at the sufficiency of the evidence. And so I see my time is up. I would ask that this court affirm the district court. Thank you. Thank you, counsel. Thank you, Your Honors. One of the points that Mr. Contreras just raised was that the officer didn't do anything on the scene basically. He should have provided care. I think what we have to remember, and this goes to the second issue that we raised about the putting the state created danger. We did not put him in any greater danger than he was already in at the time. If you look at Mr. Gomes' own testimony, he stated he had stopped taking his meds months before, had not sought any medical care for months, despite knowing his condition, had been suffering adverse conditions that day. During, and this is also in the record, if you look at the report of the incident, he did not state he was on his way to work. He said he thought he was down in LA near a baseball arena, I believe. So that is there. But when we get to it, when we look at the facts of it, he also stated, and this is critically important for the state created danger, he did not intend to seek medical care. He intended to go to work as an armed security guard carrying a gun, go to work despite knowing all these things, knowing he already pulled off. At no point did he say he was going to seek any medical care. At any point in time, he could have said, hey, I think I need an ambulance. Officer Hall would have called an ambulance. Hey, I think I need to see a doctor. He would have gone in to see a doctor. He didn't. He acted just like the regular drunks and others that officers see all the time. His symptoms were consistent. That is what happened here. Officer Hall actually put him in a better position because instead of the plaintiff going to work and basically probably passing out there with a gun, which would place the public at risk, he was taken into custody. Within 40 minutes, he was taken in for the blood draw. Again, at that point in time, he could have told the phlebotomist, hey, I think I need to see a doctor. He didn't. He didn't ask for any medical care when he was there. That's in the medical records. Additionally, when he was at the hospital, or not the hospital, at the jail, he could have said something more. He didn't. There was nothing raised about these issues until the second visit when he had to be back at that point when the blood sugar levels were known. That is a key fact to the state created danger as well. So on that ground alone, we think the district court erred. All right. We thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for the day. Thank you. All rise.
judges: BENNETT, KOH, MENDOZA